Jimmy Borunda 019683
830 N. First Avenue Suite 208
Phoenix, AZ  85003
T:  602-253-0702
F:  602-254-6677
Jimmy.borunda@azbar.org

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

RAMON LUNA BUENO, (Maricopa County Sheriff's Office 4th Avenue Jail Booking No. T122837),

     Plaintiff,

     vs.

Phoenix Police Officer J. CHANG (Badge #8869); Officer C. HOLTON (Badge #7892), Officer C. HOWARD (Badge #8038), Officer B. WETZEL (Badge #5508), Officer B. ESPERUM (Badge #5638), Officer B. MORRIS (Badge #7878), and Officer K. GARN (Badge #8691),
THE CITY OF PHOENIX, a municipality;
John Does I-XXV; Jane Does I-XXV;
MARICOPA COUNTY, a municipal subdivision;
JOSEPH M. ARPAIO, Sheriff of Maricopa County;
DON MARCHAND, a deputy sheriff;
John and Jane Does 1-5, Unknown Sheriff's Deputies; and Jan,

     Defendant.

No.  2:16 CV-03450-DGC-JZB

**FIRST AMENDED COMPLAINT**

**Assigned to the Hon. David G. Campbell**

-1-

PARTIES

1.     Plaintiff Ramon Luna Bueno (Booking No. T122837) is a resident of Maricopa County, Arizona, and currently incarcerated in the Fourth Avenue Jail in Maricopa County, Phoenix, Arizona.

2.     Defendant City of Phoenix is a municipality organized under the laws of the State of Arizona.

3.     The Phoenix Police Department is an agency of Defendant City of Phoenix.

4.     Defendant City of Phoenix is responsible for the acts and omissions of its agents and employees, including Phoenix Police officers, acting within the scope of their employment pursuant to the doctrine of *respondeat superior,* unless others stated by law.

5.     Upon information and belief, Defendant J. Chang (Badge # 8869), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Chang was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct of Defendant Chang as described in this Complaint, were undertaken within the course and scope of Defendant Chang's employment with the City of Phoenix.

6.     Upon information and belief, Defendant J. Holton (Badge # 7892), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Holton was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct of Defendant Holton as described in this Complaint, were undertaken within the course and scope of Defendant Holton's employment with the City of Phoenix.

7.     Upon information and belief, Defendant C. Howard (Badge # 8869), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Howard was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct

of Defendant Howard as described in this Complaint, were undertaken within the course and scope of Defendant Howard's employment with the City of Phoenix.

8.      Upon information and belief, Defendant B. Wetzel (Badge # 5508), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Wetzel was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct of Defendant Wetzel as described in this Complaint, were undertaken within the course and scope of Defendant Wetzel's employment with the City of Phoenix.

9.      Upon information and belief, Defendant B. Esperum (Badge # 5638), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Esperum was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct of Defendant Esperum as described in this Complaint, were undertaken within the course and scope of Defendant Esperum's employment with the City of Phoenix.

10.     Upon information and belief, Defendant B Morris (Badge # 7878), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Morris was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct of Defendant Morris as described in this Complaint, were undertaken within the course and scope of Defendant Morris's employment with the City of Phoenix.

11.     Upon information and belief, Defendant Keith Garn (Badge # 8691), is a married individual who resides in the County of Maricopa, State of Arizona.  At the time of the incidents at issue in this matter, Defendant Garn was employed by the Defendant City of Phoenix through the Phoenix Police Department.  All of the acts, omissions, or other conduct of Defendant Garn as described in this Complaint, were undertaken within the course and scope of Defendant Garn's employment with the City of Phoenix.

12.     Defendants John Does 1-5 and Jane Does 1-5, included in the caption of this Complaint, are sued here under fictitious names and capacities inasmuch as true names and capacities are currently unknown, and at all times relevant hereto, were acting in furtherance of their marital communities.  Said Doe defendants may include, but are not necessarily limited to, employees and agents of the Phoenix Police Department, who participated in the arrest and wrongful acts directed at Plaintiff.  At such times as true names and capacities have been established, the pleadings will be amended accordingly.

13.     Defendant Maricopa County is a municipality, a political subdivision and an entity of the State of Arizona that can sue or be sued in its own name, doing business as Maricopa County, Arizona.  Maricopa County is legally required to conduct its jail procedures, programs and activities through the Maricopa County Sheriff's Office, a non-jural entity of Maricopa County, in a lawful manner not violating Plaintiff's rights under the state and federal constitution and under state and federal law.

14.     Defendant Joseph M. Apraio was, at the time of the events in question, the Sheriff of Maricopa County, Arizona.  He was the final policy and decision-maker for Maricopa County in the area of law enforcement and its jails.  For Maricopa County, he is responsible for setting and implementing the policies, practices, customs and traditions of the MCSO, its deputies and jails, including, but not limited to, creating and regulating department policies and practices of detentions, arrests and related treatment of individuals in Maricopa County and in all matters related to or connected with the procedures and operation of the jails and MCSO.  Defendant Arpaio was also responsible for the recruiting, training, supervising, monitoring, regulating, directing, managing, disciplining and controlling all MCSO deputies on all levels of rank who carry out the policies, directives, practices, traditions and customs that have cause and resulted in the violation of Plaintiff's constitutional rights as set forth herein.  Defendant Arpaio's duties are now being handled by his successor in office, Sheriff Paul Penzone.

15.     Defendant Sheriff's Deputy Chief Don Marchand was, at the time giving rise to this complaint, an MCSO officer and resident of Maricopa County, Arizona.   At all times relevant herein, Marchand was and was a Deputy Sheriff, employed full-time with the MCSO. He is an agent of, and under the supervision, direction and control of Defendant Maricopa County and Defendant Sheriff Arpaio.

16.     Defendants Unknown Sheriff's Deputies and/or Detention Officers John Does 1-5 and Unknown Sheriff's Deputies and/or Detention Officers Jane Does 1-5 are sued herein under fictitious names and capacities inasmuch as trued names and capacities are currently unknown.  At such times as true names and capacities have been established, the pleadings will be amended accordingly.

JURISDICTION AND VENUE

17.     This action is brought to seek redress for violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution (incorporating the First, Fourth, **Fifth** and Eighth Amendments and thus applied against the States); to deter, stop and punish by an award of damages for the Defendants' violations of Plaintiff's constitutional rights.

18.     This Court has original jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

19.     All acts complained of herein occurred in Maricopa County, Arizona.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1 & 2).  This Court has authority to award attorney fees to Plaintiff under but not limited to 42 U.S.C. § 1988(b).

20.     As a result of the excessive force used during his arrest, Plaintiff asserts a claim for the violation of his federally protected civil rights under color of state law.  (42 U.S.C. § 1983 and 1988(a)).

FACTUAL BACKGROUND

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows:

21.     On October 15, 2014, at 18:35 hours, officers of the Phoenix Police Department ("Phoenix PD") and other law enforcement personnel arrived at 4251 West Vista Avenue, Phoenix, AZ 85051, for the purposes of executing a search warrant that was being drafted at that time and to potentially arrest the Plaintiff herein, Mr. Ramon Bueno, for alleged participation in the shooting incident of a Department of Public Safety officer.  The Phoenix PD was in charged of the action at 4251 West Vista Avenue, Phoenix, AZ.

22.     Phoenix PD officers positioned themselves both in front of and behind the residence (i.e., surrounding the residence), along with other law enforcement officers.  Many of the officers were dressed in full tactical police uniforms including ballistic vests.  In addition to the officers named in the caption of this Complaint, preliminary investigation indicates that other Phoenix PD officers who many have been involved included the following:  (A) Special Assignments Unit Personnel # 1-11; (B) Front Snipers (12-13); and (C) Rear Tactical Personnel (# 14-28), as follows:  (1) Sgt. J. Abernathy (Badge #6439); (2) Ofc. W. Underwood (Badge #5052); (3) Ofc. G. Liebertz (Badge #7447); (4) Ofc. C. Trapp (Badge #6561); (5) Ofc. N. Wolfenden (Badge #7931); (6) Ofc. A. Austin (Badge #8266); (7) Ofc. R. Dorfman (Badge #6699); (8) Ofc. A. Morrison (Badge #8506); (9) Ofc. J. Rogne (Badge #7540); (10) Ofc. T. Whitbeck (Badge #4618); (11) Ofc. M. Eyrich (Badge #6082); (12) Ofc. J. Knaup (Badge #5572); (13) Ofc. T. Clark (Badge #7727); (14) Ofc. J. Jahnke (Badge #5795); (15) Ofc. J. Rice (Badge #6976); (16) Ofc. I. Wallace (Badge #9460); (17) Ofc. E. Piering (Badge #7006); (18) Ofc. N. Thompson (Badge #7361); (19) Ofc. B. Gruner (Badge #8623); (20) Ofc. B. Hammond (Badge #7725); (21) Ofc. F. Herman (Badge #7250); (22) Ofc.. M. Malpass (Badge #6532); (23) Ofc. C. Palmer (Badge #7013); (24) Ofc. B. Walsh (Badge #8562); (25) Ofc. E. Miner (Badge #7273); (26) Ofc. J. Walker (Badge #8288); (27) Ofc. K. Fricke (Badge #7937); (28) Ofc. D. Norman (Badge #6696); and (29) Det. J. Butcher (Badge #6628).

23.     Mr. Bueno was standing outside the house in the carport area.  The police turned floodlights on the house, and began to approach the residence with weapons drawn, and told Mr. Bueno to remain where he was.  Mr. Bueno remained in the carport, and walked two feet

to the wall of the residence at a spot close to the front of the house, and put his hands up on the wall, spread eagled.  Mr. Bueno then remained unmoving, with his arms up and the palms of his hands flat on the wall, and with his legs spread.  He took extra care to make no movement because he was concerned that the armed officers behaved as though they were prepared to shoot him.

24.     While Mr. Bueno was unmoving with his arms up and his hands against the wall, officers in the front and back of the house began yelling contradictory commands.  An officer in the front of the house ordered Mr. Bueno to come to him.  As Mr. Bueno was about to comply, an officer in the back of the residence ordered him to remain where he was.  The officer in front acted as though he was angry because Mr. Bueno was not coming toward him, while the officer in the back continued to tell Mr. Bueno not to move.  This yo-yo game continued with Mr. Bueno at risk of being shot for failure to comply no matter what he did.  Mr. Bueno remained immobile on the wall of the residence and began to look toward the front and then the back, and noticed that there was a red dot on the wall moving toward where his head was.  At the same time, an officer in the back began to shout *"No, no put that gun down, put that gun down."*  Mr. Bueno realized he was being set up to be killed for allegedly failing to comply with police orders, and that the yelling about him allegedly having a gun was a pretext for justifying him being shot and killed.  Mr. Bueno began yelling as loud as he could to the officers in the front of the residence to come and get him that he was not going to move.  An officer from the front came to Mr. Bueno and handcuffed him, turned Mr. Bueno around to face him, and yelled, *"It's him, it's him."*

25.     Officers surrounded Mr. Bueno and he was then lifted up in the air by six of the officers, who began to assault him from both sides.  Mr. Bueno was taken to a black SUV, but instead of putting him in the vehicle, the officers slammed him face down into the street, with his hands still cuffed behind his back.  With Mr. Bueno face down on the street with his hands cuffed behind his back, several officers began to kick and stomp Mr. Bueno's back, kneeing him on both sides of his head, and using his handcuffs to pull his arms up and over his head.

-7-

Mr. Bueno felt something give in his left shoulder, heard his left shoulder popping, and both shoulders were in great pain from his arms being pulled in a direction that his should joints could not allow.  Mr. Bueno began screaming, and screamed so loud that neighbors could hear him.   On information and belief, the officers involved in beating Mr. Bueno included Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508, Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691).

26.    In Mr. Bueno's own words, *"They started to torture me right in the open in the neighborhood.  They were stomping on my head, the back of my neck, my upper and lower and middle of my back, and along the back of both legs.  One side of my whole face was on the street while an officer had his knee and whole body weight on my head; jumping up and down."*  An officer asked where Danny was and that Mr. Bueno was going to get shot or bitten by the dog.  As Mr. Bueno was screaming and yelling for help, telling the officer he didn't know, he was told, *"Shut the fuck up, pussy."*  The officer starting beating him up again, this time turning Mr. Bueno's head to the other side so the other side of his face would be on the street.  The torture continued and Mr. Bueno kept begging, yelling, and screaming for help knowing that the whole neighborhood could hear; as well as within the hearing of other enforcement officers who were there and who failed to intervene.  One of the officers began to beat Mr. Bueno in the head with what felt like a metal object, such as a flashlight or the butt of a gun.

27.    After the officers stopped beating Mr. Bueno's back, he was lifted up, turned over, and slammed back onto the street, this time face up with his cuffed hands pinned underneath his body.  One of the officers who had been stomping and kneeing Mr. Bueno on his head and face began to repeatedly let his weight fall onto his knee on Mr. Bueno's chest, and it felt to Mr. Bueno as though his chest was going to break or collapse.  At the same time, other officers started to beat and stomp Mr. Bueno all over from the front of his body.  Of all the law enforcement officers that were there, not one would give Mr. Bueno any help.  Instead, they went to where he was laying handcuffed on the asphalt; in sequence and in pairs of two or

three, they joined their fellow officers in the brutal beating of Mr. Bueno.  Mr. Bueno alleges that each one of the officers took a turn at beating him.  Another officer grabbed Mr. Bueno's left leg and pulled the leg so that Mr. Bueno's knee was on the curb, and held Mr. Bueno's leg there while another officer began to stomp on Mr. Bueno's knee.

28.     After the officers finished beating Mr. Bueno, two officers picked him up part way by his shoulders and began to drag him toward another group of officers.  One of the officers in the second group who was in plainclothes with a badge on a chain around his neck said not to bring him to them because the news media were coming.  Mr. Bueno was finally dragged into the black SUV and forcefully thrown inside, causing him to hit the top of his head and lose consciousness.  Mr. Bueno did not remember picking himself up to sit, but he woke up to find him self sitting down with his head leaning on the passenger back side window and one of the swat team members was banging on the window with his flashlight and flashing the light in his eyes; mocking and laughing at him saying, *"How do you like it, huh?  How do you like it, pussy?"*  On the way to the police station, the officers were debating whether they should stop on the way and *"finish what they started."*

29.     When Mr. Bueno arrived at the downtown Phoenix police station, there were news media who were taking pictures of him, showing how badly he had been beaten.

30.     It was blatantly obvious that Mr. Bueno needed medical attention, yet, instead of calling the paramedics or taking him to the hospital, he was taken for an interview to an unknown police station before taking him to police headquarters.  The interview was done by Detective Jeanette Butcher (Badge #6228); Mr. Bueno recognized and remembered that Detective Butcher was there when he was being tortured, standing in front of his face while he was on the floor, kicking him in the mouth and telling him, *"Die, you piece of shit, die!"*  Mr. Bueno was in no shape to be interviewed nor does he have any recollection of what was asked by the detective or what he responded.  After being taken to the downtown station, he continued to ask for medical attention.  Eventually, some one called the fire department, and, after being briefly examined, the fire department told the police that Mr. Bueno needed to be

taken to the hospital, especially for his shoulder.  Eventually, the police removed Mr. Bueno to St. Luke's Hospital.  Mr. Bueno was told that he would be taken for x-rays of his shoulders, left knee, chest and back, and a CT scan of his head.  The hospital personnel did take x-rays of his left shoulder and then took him for a CT scan of his head.  While Mr. Bueno was having the CT scan, one of the plainclothes officers went to the back where the doctor was and spoke with him.  The doctor then turned off the machine and came out and told the three plainclothes officers that Mr. Bueno was done.  No x-rays were taken of his other shoulder, his knee, his chest, or his back.  Mr. Bueno was taken to a bed with curtains around it,, and a male nurse began to insert an IV, telling Mr. Bueno that he was going to be put to sleep so that doctors could fix his shoulder.  After the IV was put in, a doctor entered (believed to be Dr. Mathurin), became upset about the IV having been put in and told the male nurse to take it out.  The doctor then told the officers that there was nothing wrong with Mr. Bueno and that he could be taken back to jail.  When Mr. Bueno tried to talk to the doctor, the doctor just walked away.  Mr. Bueno asked the male nurse if he could at least have something for the pain, and the male nurse apologetically told Mr. Bueno that he could not give him anything unless the doctor told him to do so.  Mr. Bueno was then taken back to the jail.  As they proceeded to take Mr. Bueno back to the police headquarters, the officers were just laughing.  The police report of the hospital visit confirms the removal of the IV, confirms that no pain medication was administered or prescribed, and confirms that the doctor stated that there was not should injury other than *"remnants of an old wound."*

31.    Mr. Bueno was not permitted to see a doctor for nearly a month, by which time his severe bruising was almost gone.

32.    On August 26, 2015, Mr. Bueno was taken to St. Luke's Hospital for an operation on his left knee, with two holes drilled into the bone, and a ligament attached with two screws to hold it in place.

33.     On May 23, 2016, Mr. Bueno was taken to St. Joseph's Hospital for surgery related to his left shoulder, consisting of attaching a length of material to his collarbone with screws and washers.

34.     Mr. Bueno sought the assistance of an attorney to represent him on a state and federal civil rights action for redress for the excessive force used against him during the arrest despite him having put up no resistance during the arrest.

35.     Mr. Bueno's civil rights attorney has been attempting to arrange a confidential legal visit with Mr. Bueno since October 15, 2015, the date that counsel was verbally retained. To date, and despite numerous attempts to obtain a confidential visit, personnel at the Fourth Avenue Jail have not permitted that attorney any confidential communication with the Plaintiff.  The Commander of the jail, Maricopa County Deputy Chief Donald Marchand, has refused to permit a confidential legal visit, instead insisting that the visit take place with the attorney standing out in the jail corridor (such visits are often referred to as "cell side" visits). Months of attempting to arrange for a confidential legal visit have been unsuccessful.

36.     Maricopa County Fourth Avenue Jail Chief Donald Marchand has clearly indicated that Mr. Bueno's civil rights attorney would be permitted only "cell side" or video visitation with Mr. Bueno.  Communication during "cell side" visits requires both parties to shout in order to be heard by the other party, and detention officers and others in the corridor can overhear the attorney client communication.  It is not possible to engage in confidential communication during a "cell side" visit.

37.     Because a law enforcement officer was allegedly injured in the case, Mr. Bueno has been treated differently from other pretrial detainees housed in the Fourth Avenue Jail, and one of the most significant differences is that Mr. Bueno has been denied any confidential legal visit with his civil rights attorney for purposes of seeking redress for excessive use of force resulting in serious injuries sustained during his arrest and detention.

38.     Mr. Bueno has sought confidential visits with his retained civil rights attorney for the following purposes: (a) the retained attorney needs to confer confidentially with Plaintiff in

order to accurately determine the scope of the civil lawsuit that Plaintiff desires to file, the identity of several of the defendants in such civil lawsuit, and additional details of the facts upon which the civil rights claims would rest; (b) the retained attorney needs to complete a formal fee agreement that clearly states the scope of the representation and other matters ordinarily included in a fee agreement that meets the standards of the State Bar of Arizona; and (c) the retained attorney needs to confer confidentially with Plaintiff on the subject of Plaintiff's treatment by the institutional authorities and staff.

39.     The need for a confidential legal visit with Plaintiff regarding Plaintiff's treatment by Maricopa County Sheriff's Office deputies, detention officers, and other staff arises from antagonism toward Plaintiff because a member of law enforcement was allegedly injured by Plaintiff.  This is also the putative reason behind the jails obstructionism, regarding a confidential legal visit.  Mr. Bueno alleges that he has repeatedly been subjected to denial or severe delay of medical treatment, interference with meals, failure to provide toilet paper, and numerous other forms of punishment.

CLAIMS FOR RELIEF

~~Count One~~

~~Negligence and/or Gross Negligence~~

~~(As Against Individual Officers and~~

~~Defendant City of Phoenix)~~

~~40.  Defendants owe a duty of reasonable care to Plaintiff.~~

~~41.  Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691) acted negligently and/or grossly negligently, and Defendants breached the duty of reasonable care.~~

-12-

42. Defendant City of Phoenix is vicariously responsible for the actions of its individual officers and employees under the doctrine *respondeat superior.*

43. As a direct and proximate result of said Defendants' breach of their duty of care to Plaintiff as described herein, Plaintiff sustained serious and substantial injury, for which he is entitled to redress from said Defendants.

COUNT TWO

Intentional and/or Negligent Infliction of Emotional Distress

(As Against Individual Officers and

Defendant City of Phoenix)

44. The conduct of Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691) as described herein was extreme and outrageous, and was either intended to cause emotional distress to Plaintiff, or was performed in reckless disregard of the near certainty that such distress will result from his conduct.,

45. Plaintiff did, in fact, sustain severe emotional distress as a result of the Defendants' wrongful conduct.

46. Defendant City of Phoenix is vicariously responsible for the actions of its individual officers and employees under the doctrine *respondeat superior.*

47. As a direct and proximate result of said Defendants' intentional infliction of emotional distress, Plaintiff sustained serious and substantial injury, for which he is entitled to redress from said Defendants.

COUNT THREE

Assault and Battery and Excessive Force

(As Against Individual Officers and

~~Defendant City of Phoenix)~~

~~48.   Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691) offensively touched Mr. Bueno, and/or created apprehension in Mr. Bueno of an offensive touching.~~

~~49.   Defendant City of Phoenix is vicariously responsible for the actions of its individual officers and employees under the doctrine *respondeat superior*.~~

~~50.   As a direct and proximate result of said Defendants' assault of Plaintiff as described herein, Plaintiff sustained serious and substantial injury, for which he is entitled to redress from Defendant City of Phoenix~~

**COUNT ONE – CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER § 1983**

**(all individual defendants employed by the City of Phoenix)**

**Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows:**

**40.    The individual defendants, Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691), and each of them, in any combination thereof, conspired and then acted in concert for the purpose to commit an unlawful act by unlawful means, to-with: a cruel and vicious beating on the Plaintiff, the principal element of which was an agreement between the parties to inflict a wrong or injury upon the Plaintiff and an overt acts which results in actual damage to the Plaintiff.**

**41.    The Plaintiff affirmatively alleges that as between the individual defendants employed by the City of Phoenix, there was a meeting of the minds to inflict unconstitutional harm upon the Plaintiff and to violate his civil rights or evidence upon which a meeting of the minds could be inferred to inflict such an injury.  There was a**

single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences.  Failure to intervene in said conspiracy and come to the aid of the Plaintiff constituted proof of the conspiracy.

42.    The overt act in furtherance of the conspiracy was any physical blow to the body or head of Plaintiff Ramon Bueno.

43.    As a direct and proximate cause of the foregoing agreement and actions, the Plaintiff has suffered, and will continue to suffer, the injuries listed herein.

### COUNT TWO – FAILURE TO INTERVENE

### (all individual employees employed by the City of Phoenix)

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows:

44.    Said named individual Defendants, Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691), and each of them, had a legal and constitutional duty to intervene on behalf of the Plaintiff while he was being beaten and abused by the other individual defendants.

45.    Each of the individual named defendants was acting in the course and scope of his or her duty on October 15, 2014, and in their official capacity.   Each said Defendant had a reasonable opportunity to intervene in the violation of Plaintiff's constitutional rights by the other officers and failed to do so.

46.    Each named officer is liable for failure to intercede in the violation of constitutional rights by the other officers because they had a "realistic opportunity" to do so.

47.    As a direct and proximate cause of the foregoing named individual officers' failure to intervene, the Plaintiff suffered, and continues to suffer, the physical harms listed herein.

**COUNT THREE - 42 U.S.C. § 1983 FAILURE TO TRAIN/SUPERVISE**

**(Defendant City of Phoenix)**

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows:

48.     The violations of Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Plaintiff's damages and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of Defendant City of Phoenix, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies,, patterns, practices, and customs and to the need for more or different training, supervising, investigation, or discipline in the areas of:

      a.  Legal use of force by officers, included raising arrestees by the arms when their shoulders are pinned behind their back with handcuffs;

      b.  The proper exercise of police powers, including, but not limited to, the making of an arrest, the use of force, and the bringing of criminal charges;

      c.  The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability as officers;

      d.  Police officers' use of their status as a police officers to employ the use of force to achieve ends not reasonably related to their police duties;

      e.  The failure of certain officers to intervene in known and apparent circumstances of excessive force and constitutional infractions in violations of the First, Fourth, Fifth, and Fourteenth Amendments; and

      f.  The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Phoenix police officers.

**49.     As a direct and proximate cause of the foregoing failures to train and supervise, the Plaintiff has suffered, and will continue to suffer, the harms listed below.**

COUNT FOUR – 42 U.S.C. § 1983

(As against **named** individual defendants)

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows:

50.     Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691), used excessive and unreasonable force in effecting their arrest or detention of Mr. Bueno, a violation of the Fourth, **Fifth**, and Fourteenth Amendments.

51.     The Officers also physically accosted Plaintiff in a manner which far exceeded the minimum amount of force necessary to reasonably accomplish a lawful purpose, in violation of Plaintiff's constitutional rights, namely is First, Fourth, **Fifth**, and Fourteenth Amendments.

52.     This harmful or offensive touching by the Officers directly and proximately caused Plaintiff to suffer general and special damages, in amounts to determined by a jury including physical injuries, present and future medical expenses, pain, suffering, psychological trauma,  and emotional anguish.  Plaintiff is also entitled to an award of punitive damages.

53.     As a direct and proximate result of Defendants' violation of Mr. Bueno's constitutional rights, Mr. Bueno sustained damages, including, but not limited to, pecuniary loss, mental anguish, permanent physical damage and pain and suffering, all in an amount to be proven at trial.

54.     The wrongful acts by Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691), were intended to cause Mr. Bueno injury, or were motivated by spite or ill will, or said Defendants acted to serve their own interests, having reason to know or consciously disregarding a substantial risk that their conduct might significantly injure the

rights of Mr. Bueno.  Thus, the wrongful acts of Defendants Chang (Badge #8869), Holton (Badge #7892), Howard (Badge #8038), Wetzel (Badge #5508), Esperum (Badge #5638), Morris (Badge #7878), and Garn (Badge #8691), therefore, merit an award of exemplary damages against them in their individual capacities in an amount expected to be proven at trial that is sufficient to punish the individual officers, and to deter the individual officers and others from engaging in such wrongful acts in the future.

COUNT FIVE – 42 U.S.C. § 1983

(As against all individual **county** defendants)

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows)

55.     Defendants Sheriff Joseph Arpaio, Sheriff's Deputy Chief Don Marchand, and/or John Does 1-5 and/or Jane Does 1-5 interfered with, delayed, or prevented medical treatment for Mr. Bueno for the injuries proximately caused by the use of excessive and unreasonable force in effect the arrest or detention of Mr. Bueno, in violation of his Fourth, **Fifth**, and Fourteenth Amendments.

56.     This intentional or grossly negligent interference and/or delay in medical treatment proximately caused Plaintiff to suffer general and special damages, in amounts to be determined by a jury including exacerbation of physical injuries, present and future medical expenses, pain, suffering, psychological trauma and emotional anguish.  Plaintiff is also entitled to an award of punitive damages.

57.     The wrongful acts by Defendants were intended to cause Mr. Bueno injury, or were motivated by spite or ill will, or said Defendants acted to serve their own interests, having reason to know and consciously disregarding a substantial risk that their conduct might significantly injure the rights of Mr. Bueno.  Thus, Defendants' wrongful acts, therefore, merit an award of exemplary damages against them in their individual capacities in an amount sufficient to punish the individual officers, and to deter the individual officers and others from engaging in such wrongful acts in the future.

1

2

3

4

COUNT SEVEN – 42 U.S.C. § 1983

(As against individual **county** defendants)

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleged as follows:

5

6

7

8

9

10

11

    58.    Defendants Sheriff Joseph Arpaio, Sheriff's Deputy Chief Don Marchand, and/or John Does 1-5 and/or Jane Does 1-5 prohibited, interfered with, delayed or prevented confidential legal visits for Mr. Bueno with his retained civil rights attorney which were sought for the purposes of seeking redress for injuries proximately caused by the use of excessive and unreasonable force in effecting the arrest or detention of Mr. Bueno, a violation of his Fourth, **Fifth**, and Fourteenth Amendment rights.  Plaintiff has been forced to communicate with hit s retained civil rights attorney under non-confidential circumstances, continuing to this day.

12

13

    59.    All of the acts/omissions of which Plaintiff complains were done under the color of State law, pursuant to each Defendant's authority under the law of the State of Arizona.

14

15

16

17

18

    60.    The intentional or grossly negligent interference and/or prevention of confidential legal visits directly an proximately caused Plaintiff to suffer general and special damages, in amount to be determined by a jury including psychological trauma, emotional anguish, and interference with Plaintiff's right of access to court via his retained counsel. Plaintiff is also entitled to an award of punitive damages.

19

20

21

22

23

24

25

26

    61.    The wrongful acts by Defendants constitute abuse of process and were intended to cause Mr. Bueno psychological trauma and emotional anguish, or were motivated by spite or ill will, or said Defendants acted to serve their own best interests, having reason to know and consciously disregarding a substantial risk that their conduct might significantly injure the rights of Mr. Bueno.  Thus, the wrongful acts of the Defendants, therefore, merit an award of exemplary damages against them in their individual capacities in an amount sufficient to punish the individual officers, and to deter the individual officers and other from engaging in such wrongful acts in the future.

27

COUNT SEVEN – 42 U.S.C. § 1983

-19-

(As against all individual **county** defendants)

Plaintiff re-alleges all of the foregoing as if fully set forth herein and further pleads and alleges as follows:

62. Defendants Sheriff Joseph Arpaio, Sheriff's Deputy Chief Don Marchand, and/or John Does 1-5 and/or Jane Does 1-5 deliberately or grossly negligently denied, interfered with, delayed, or prevented the delivery of meals, provision of toilet paper, and numerous other actions constituting forms of punishment without due process of law for Mr. Bueno, a violation of his Fourth, Fifth, and Fourteenth Amendments.

63. All of the acts/omissions of which Plaintiff complains were done under the color of State law, pursuant to each Defendant's authority under the laws of the State of Arizona.

64. The intentional or grossly negligent denial, interference with, delay in, or prevention of delivery of meals, provision of toilet paper and numerous other actions constitute forms of punishment without due process of law directly and proximately caused Plaintiff to suffer general and special damages, in amounts to be determined by a jury including psychological trauma, emotional anguish, and violation of Plaintiff's rights to be free from cruel and unusual punishment and his due process rights guaranteed under the Fifth and Fourteenth Amendment.   And his right to be free from punishment without due process.

65. The wrongful acts by Defendants were intended to cause Mr. Bueno psychological trauma and emotional anguish, or were motivated by spite or ill will, or said Defendants acted to serve their own interests, having reason to know or consciously disregarding a substantial risk that their conduct might significantly injure the rights of Mr. Bueno.   Thus, the wrongful acts of Defendants, therefore, merit an award of exemplary damages against them in their individual capacities in an amount to be proven at trial that is sufficient to punish the individual officers, and to deter the individual officers and others from engaging in such wrongful acts in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ramon Bueno prays for judgment against the Defendants as follows:

A.   That Plaintiff be awarded reasonable and just actual, general, special, compensatory, and punitive damages, as may be appropriate and justified by the evidence presented at trial, including, but not limited to, medical expenses, lost opportunity cost, loss of enjoyment of life and emotional distress;

B.   That Plaintiff be awarded taxable costs and pre- and post-judgment interest to the extent permitted by law;

C.   That Plaintiff be awarded exemplary damages against the individual Defendants as to civil rights violations only;

D.   That Plaintiff be awarded attorney fees and costs pursuant to 42 U.S.C. § 1988;

E.   That Plaintiff be granted preliminary and permanent injunctive relief  against Defendants to correct and stop those continuing violations set forth herein (Defendants' intentional violations of Plaintiff's constitutional rights under the Fifth, Eighth, and Fourteenth Amendments, especially Plaintiff's right to confidential access to counsel and right of access to the courts through retained counsel, is continuous and ongoing and done with a deliberate indifference to correct such violations resulting in harm to Plaintiff);

F.   That Plaintiff be awarded such other and further relief as the Court deems just and proper under the circumstances of this case.

DEMAND FOR A JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues in this matter triable to a jury.


   Respectfully Submitted on this _____ day of July, 2017.


                              /s/ Jimmy Borunda (019683)
                              Jimmy Borunda 019683
                              830 N. First Avenue Suite 208
                              Phoenix, AZ  85003
                              Attorneys for  Plaintiff

1    Original of the foregoing of the electronically foregoing filed via ECF on this ___ day of July,

2    2017, with:

3    United States District Court

4    District of Arizona
     Phoenix, AZ  85003

5

6    Copy of the foregoing
     delivered/faxed/mailed/emailed on ___ day of

7    July, 2017, to the following CM/ECF
     registrants:

8

9    Lori V. Berke
     Jody C. Corbett

10   Berke Law Firm
     1601 N. 7th Street, Suite 360

11   Phoenix, AZ  85006
     lori@berkelawfirm.com

12

13   J. Kenneth Mangum

14   Maricopa County Attorney Civil Services
     Division

15   222 N. Central Avenue, Suite 1100
     Phoenix, AZ  85004

16

17

18

19

20

21

22

23

24

25

26

27