SKC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramon Luna Bueno, | No. CV 16-03450-PHX-DGC (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| J Chang, et al., | |
| Defendants. | |

Plaintiff Ramon Luna Bueno, who is confined in the Maricopa County Fourth Avenue Jail, has filed, through counsel, a civil rights complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Second Motion for Injunctive Relief. (Doc. 56.) Defendants Maricopa County, Maricopa County Sheriff Paul Penzone, and Maricopa County Sheriff's Office (MCSO) Deputy Don Marchand ("County Defendants") oppose the motion. The motion has been fully briefed (Docs 58, 22), and will be denied.

**I.   Background**

   **A.   Plaintiff's Complaint**

On screening of Plaintiff's seven-count First Amended Complaint, the Court found that Plaintiff stated state law tort claims against a number of City of Phoenix Police Department employees ("City Defendants") in Count Two; Fourth, Fifth, and Fourteenth Amendment excessive use-of-force claims against City Defendants in Count Four; Fourth, Fifth, and Fourteenth Amendment medical care claims against County Defendants in Count Five; and Fourth, Fifth, and Fourteenth Amendment right to counsel

claims against County Defendants in Count Six, and ordered these Defendants to answer the claims against them. (Doc. 25.) The Court dismissed the remaining claims and Defendants. (*Id.*)

### B. Plaintiff's Previous Motion for Injunctive Relief

Plaintiff previously filed a motion for injunctive relief in which he sought a Court order directing County Defendants to permit Plaintiff's counsel in this action, Mr. Borunda, reasonable in-person attorney/client visits with Plaintiff at the Fourth Avenue Jail. (Doc. 20.) According to Plaintiff, because Mr. Borunda was not counsel of record in Plaintiff's criminal case, Mr. Borunda was only permitted to meet with Plaintiff via video conferencing or cell-side visits, even though Mr. Borunda is hard of hearing and there is no privacy or confidentiality in these types of visits. (*Id.* at 4.)

The Court denied this motion as moot based on County Defendants' showing that Plaintiff had already obtained the relief he sought. (Doc. 26.) County Defendants provided the affidavit of MCSO Captain Vai that, as a Captain at the Fourth Avenue Jail, his duties included "making decisions about visitation requests with inmates." (Doc. 21-1 ¶ 2.) With respect to Mr. Borunda's visits with Plaintiff, Captain Vail testified that he had directed that "Mr. Borunda and Mr. Bueno shall have access to the private interview room as long as usual scheduling protocol is followed, the same as any other attorney and client" and "[a]bsent some unexpected emergency or demonstrated security concern, this access will not be changed without prior approval of the Court." (Doc. 21-1 ¶ 10.)

The Court concluded that Plaintiff's visitation issue had been resolved and any fears Plaintiff had that he would not be permitted in-person visits with counsel were merely speculative and not a sufficient ground to obtain preliminary injunctive relief. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th 1988) (speculative injury is not irreparable injury sufficient for a preliminary injunction); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."

*Caribbean*, 844 F.2d at 674 (internal citations omitted). The Court stated that if Plaintiff's counsel was again denied in-person visits with Plaintiff absent a demonstrated security concern, it expected that Plaintiff would renew his request for injunctive relief. (Doc. 26 at 6.) Plaintiff has now filed a second motion in which he seeks a preliminary injunction "compelling the County Defendants to permit counsel to confer face to face and in person with his client, Plaintiff Ramon Bueno." (Doc. 56 at 13.)

**II.    Legal Standards**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter*, 555 U.S. at 24 (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law

clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

## III. Second Motion for Injunctive Relief

Plaintiff acknowledges that sometime after October 13, 2017, when the Court denied his first motion as moot, Mr. Borunda was able to meet with Plaintiff in the attorney/client visitation room at the Fourth Avenue Jail without incident. (Doc. 56 at 5.) But on June 10, 2018, when Mr. Borunda again tried to meet with Plaintiff to discuss important issues in this action involving interrogatories and medical releases, he was taken to the close custody section where he was met by Deputy T. Nelson, who had previously refused him in-person visits with Plaintiff. (*Id.*) Deputy Nelson refused to allow Mr. Borunda to visit Plaintiff in a confidential setting and only offered him a cell-side visit. (*Id.*) When Mr. Borunda told Deputy Nelson that this was unacceptable, Deputy Nelson was unable to explain the reason for the restriction except to state that his orders came from a "supervisor." (*Id.*)

Plaintiff argues that he has met all of the required *Winter* factors for obtaining the requested preliminary injunctive relief, including that he is likely to succeed on the merits of his right to counsel claim in Count Six and he will suffer irreparable harm to his ability to vindicate his rights in this action absent preliminary injunctive relief requiring that he be given in-person visits with counsel. (Doc. 56 at 6−11.)

County Defendants argue that what happened on June 10, 2018 was in part the result of MCSO's errors and in part the result of Mr. Borunda's errors, including that he did not schedule a meeting with Plaintiff 24 hours in advance, as he had been advised to do, and he arrived for a visit after regular visiting hours. (Doc. 58 at 2.) Combined with

1  this, Detention Officer (DO) Nelson, who was on duty when Mr. Borunda arrived, checked for visitation restrictions in Plaintiff's record and, although all prior restrictions had been removed from the visitation comment section, a visitation restriction inadvertently remained in the general comment section of Plaintiff's record, causing DO Nelson erroneously to believe that Mr. Borunda could only visit Plaintiff cell-side. (Doc. 58 at 2−3, 7.)

County Defendants argue that as long as Mr. Borunda schedules his visits 24 hours in advance, he will be able to use the legal room for in-person visits with Plaintiff. (*Id.* at 3.) They further argue that the restriction listed in the general comment section of Plaintiff's record has since been removed, all the visitation comment sections of the Jail Management System now note that, per Captain Vail, Plaintiff and his attorney, Mr. Borunda, are to have no visitation restrictions, and as long as Mr. Borunda follows proper visitation protocol, Mr. Borunda should have no further problems. (*Id.* at 7−8.)

County Defendants present the declaration of defense counsel Charles Trullinger, who attests that on March 19, 2018, Mr. Borunda participated in a conference call with defense counsel, at which time he stated that he had tried to visit Plaintiff at the Fourth Avenue Jail a couple of times and had waited 45 minutes to an hour each time but then left, and he was considering filing another motion for injunctive relief because the Jail was still not permitting him in-person visits. (Doc. 58 at 3; Doc. 58, Ex. 1 at 2−4 (Trullinger Decl.) ¶ 3.) Mr. Trullinger told Mr. Borunda at that time that he would look into the issue right away. (Doc. 58 at 3−4; Trullinger Decl. ¶ 4.)

On March 21, 2018, Mr. Trullinger spoke to Jail personnel, who requested more information about Mr. Borunda's attempted visits, including the dates and times Mr. Borunda arrived at the Jail, whether he had scheduled his intended visits in advance, and whether he had requested legal visits. (*Id.*) Mr. Trullinger emailed Mr. Borunda asking him for this additional information so that he could "look into [the visitation issue] further." (Doc. 58-1 at 5.)

On March 25, 2016, Mr. Borunda responded: "I don't recall the exact date but it was in the beginning of this year. I didn't request a visit in advance. I did request a legal visit. I will let you know if it happens again." (*Id.*) Mr. Trullinger then wrote another email to Mr. Borunda in which he stated:

> For future reference, the jail recommends that you call ahead at least 24 hours to try to reserve the attorney room for a particular date and time. And don't forget that you have several other options for talking with Mr. Bueno if the room is not available but you need to talk to him before it becomes available. If another issue arises, please let me know while it's fresh in your mind so that I can look into it. I especially need to know the date and time you went to visit, whether you called ahead to reserve the room, and who you spoke with.

*Id.* After this email exchange, Mr. Trullinger understood that Mr. Borunda would contact him if he had any trouble scheduling or obtaining requested visits with Plaintiff, but Mr. Borunda did not contact Mr. Trullinger again before filing this Motion. (Trullinger Decl. ¶¶ 5, 7.)

County Defendants' evidence shows that the Jail has twelve full-time visitation staff officers, all of whom know that Mr. Borunda is permitted to use the legal room for visits with Plaintiff, but these visits must be scheduled in advance because the same room is used for a variety of purposes. (Doc. 58 at 6; Doc. 58-1 at 11−13 (Brown Decl.) ¶ 5.) According to Kyle Brown, the Visitation Squad Supervisor and Pro-Per Administrator at the Fourth Avenue Jail, if Mr. Borunda had followed protocol and scheduled his visits with visitation staff during normal visitation hours, or by making his requests through an email that is checked every day and responded to within 24 hours, he could have reserved the legal room for a specific date and time, even after normal visitation hours. (Brown Decl. ¶ 6.) This is because the reservation would then have been noted by a visitation officer and the information would have been forwarded to personnel on the affected shift. (*Id.*)

1    Barring this process, attorneys who show up after 5:00 p.m. for a client visit will
2    encounter a DO who is not a visitation officer, and because MCSO has approximately
3    150 2nd or 3rd shift DOs, the DO may not be familiar with visitation issues. (*Id.* ¶ 7.)
4    This is what happened when Mr. Borunda showed up on June 10, 2018. Although all the
5    MCSO shift supervisors had been informed that Mr. Borunda is permitted to use the legal
6    room to visit Plaintiff, and any prior restriction had been removed from the general
7    visitation comment section of Plaintiff's record, DO Nelson found a restriction that had
8    not been removed in the general comment section and therefore believed the restriction
9    still applied. (*Id.* ¶¶ 8−9.) Supervisor Brown has since had this restriction removed, and
10   all the visitation comment sections of the MCSO Jail Management System now note that,
11   per Captain Vail, Mr. Borunda and Plaintiff have no visitation restrictions. (*Id.* ¶ 9.) DO
12   Nelson is also now aware that there is no restriction on Mr. Borunda's visits with
13   Plaintiff. (Doc. 58-1 at 15−16 (Nelson Decl.) ¶ 9.) Accordingly, DO Nelson will permit
14   Mr. Borunda to meet with Plaintiff in the legal room for any future scheduled visits or as
15   a same-day courtesy if he is directed to do so by a supervisor. (*Id.*) Because there is only
16   one legal room for level 4, which houses approximately 288 inmates, same-day use of the
17   legal room is not always available without advance reservations, but it may be permitted
18   on occasion as a courtesy. (Brown Decl. ¶ 10.) Mr. Borunda is nonetheless still required
19   to follow MCSO's regular scheduling protocol. (*Id.*)

20   County Defendants also present evidence that cell-side visits in the Special
21   Management Unit (SMU), where Plaintiff is housed, are still private and are not subject
22   to interruptions and regular foot traffic. This is because the SMU is on a secured hallway
23   separated from the rest of floor 4 where only SMU inmates are housed, and
24   attorney/client visits do not take place in the hallway; instead, the attorney may be taken
25   into the inmate's private day-room adjacent to the inmate's individual cell. (*Id.* ¶ 11.)
26   The attorney and inmate may then talk through a grate placed between the cell and the
27   dayroom, and they may pass paperwork through a slot. (*Id.*) Visitation in this manner is
28   a regular occurrence in the SMU, and when Mr. Borunda came to visit Plaintiff on

Sunday, June 10 at approximately 6:45 p.m., DO Nelson offered several times to allow Mr. Borunda a cell-side visit, but Mr. Borunda declined. (*Id.*; Nelson Decl. ¶¶ 7−8.)

The evidence shows that Mr. Borunda has a reasonable opportunity to schedule in-person visits with Plaintiff, and he has not been prevented from doing so since the Court denied his first motion. Plaintiff presents no evidence Mr. Borunda ever attempted to schedule an in-person visit that was denied or that he ever appeared for a scheduled visit and was turned away.

Instead, the evidence shows that Mr. Borunda was advised to schedule his legal visits with Plaintiff 24 hours in advance, that he could still have met privately with Plaintiff in the day room attached to Plaintiff's cell while waiting for the legal room to become available, and he was told to contact Defense counsel if he encountered any problems. Plaintiff does not argue or present any evidence that Mr. Borunda took any of these steps. Plaintiff therefore has not shown that he has been or is likely to be denied reasonable in-person visits or that he faces irreparable harm to his ability to prosecute this lawsuit absent the Court's intervention. Accordingly, the Court will deny Plaintiff's motion for injunctive relief without prejudice.

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Injunctive Relief (Doc. 56), and the Motion is **denied without prejudice**.

Dated this 10th day of September, 2018.

David G. Campbell
Senior United States District Judge